and such essentials, to make a complete agreement, must consist of the subject-matter of the sale, the terms, and names, or a description, of the parties. Ward v. Hasbrouck, 169 N. Y. 407, 411, 62 N. E. 434, and authorities there cited.

Obviously Mr. Burton was not contracting with Mr. De Goode when he stated to Mr. Lockard the "best and final proposition that I will make"; and Mr. De Goode could not transform this incomplete working proposition into a contract with Mr. Burton by subscribing the same. The minds of the parties never met in a completed contract, in so far as the same can be made to appear from the proposition of Mr. Burton to Mr. Lockard. We find no error in the rulings of the learned court, and concur in the conclusion reached at the trial.

The judgment and order appealed from should be affirmed, with costs. All concur.

---

O'ROURKE ENGINEERING CONST. CO. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. November 11, 1910.)

1. MUNICIPAL CORPORATIONS (§ 374*)— CONTRACTS — STATUTORY PROVISIONS — SURETY IN PLACE OF PRINCIPAL.

Greater New York City Charter (Laws 1901, c. 466) § 419, requires a public letting of contracts over $1,000, unless otherwise ordered by the board of aldermen. Such a resolution was passed by the board as to certain supplemental work on an existing contract. Before the supplemental work was done, the city declared the original contractor in default, and called upon his surety to complete both the original work and the supplemental contract. *Held* that, though the resolution only named the principal contractor, the surety who did the work, under a contract made in pursuance to said resolution, could recover from the city, who could not declare the supplemental contract void, because it involved an amount over $1,000, and was let without public bids.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 374.*]

2. MUNICIPAL CORPORATIONS (§ 374*)—CONTRACTS—STATUTORY PROVISIONS— DEFAULT.

A surety who is called upon by a city to complete a contract entered into between his principal and the city is not a person in default or arrear with the city according to Greater New York City Charter (Laws 1901, c. 466) § 419, so as to prevent him from recovering upon a supplemental contract entered into between him and the city.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 374.*]

3. MUNICIPAL CORPORATIONS (§ 374*) — CONTRACTS — STATUTORY PROVISIONS— CONDITIONS PRECEDENT.

The surety of a contractor who was declared in default took over his work and completed it and did certain work on a supplemental contract. Before the executed contract was delivered, the requirements of Greater New York City Charter (Laws 1901, c. 466) § 419, that there should be an unapplied and unexpended appropriation and a certificate to the comptroller to that effect, were completed, and the surety, without waiting for the city officials to perform the ministerial acts necessary to give validity to the contract, proceeded with the work. *Held*, that the surety could recover upon the contract, the requirements of section 419 having been com-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

plied with, the city not being harmed by the fact that the surety proceeded with the work, running the hazard of receiving fair treatment.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 374.*]

Appeal from Trial Term, New York County.

Action by the O'Rourke Engineering Construction Company against the City of New York. From a judgment for defendant (65 Misc. Rep. 320, 121 N. Y. Supp. 917), plaintiff appeals. Reversed and remanded.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

L. Laflin Kellogg, for appellant.
Terence Farley, for respondent.

MILLER, J. This action is brought to recover the stipulated sum of $50,000 for work performed by the plaintiff's assignors, the Metropolitan & People's Surety Companies, in the performance of a contract, entered into between them and the defendant, the city of New York. There is no question but that the work was performed in exact accordance with the contract. Although it was made, and all of the preliminary steps were taken, pursuant to the advice and direction of the corporation counsel, the city is now defending on the ground of want of power to make the contract.

To understand the question presented, it is necessary to state in chronological order the different transactions involved. On the 12th of December, 1905, the defendant, through the commissioner of public charities, entered into a contract with the Church Construction Company for the erection of the new municipal lodging house in the borough of Manhattan, and the plaintiff's assignors executed an undertaking for the faithful performance of the contract. After a considerable portion of the work contracted for had been done, a situation arose making it impossible to proceed without sinking a caisson, which was not called for by the original contract. Thereupon, upon the advice of the corporation counsel the commissioner applied to the board of aldermen for permission to make a contract with the original contractor for the additional work without a public letting, and the board of aldermen adopted a resolution conferring such authority, which was approved by the mayor on the 2d day of April, 1907. On the 29th of April, 1907, the architect, pursuant to the terms of the original contract, made a certificate that the performance of the contract was unnecessarily and unreasonably delayed, and thereupon the commissioner notified the contractor to discontinue work, and declared the contract abandoned. Thereafter, and on the 4th day of May, the commissioner notified the plaintiff's assignors to complete both the original and the supplemental contract, a requirement which he was advised by the corporation counsel he had a right to make. Whereupon said assignors took possession of the work and continued the force of men then at work pumping until the work under the supplemental contract could be begun. Obviously the work of the original

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

contract could not be continued until that of the supplemental contract was done, and the supplemental contract could not even be entered into until funds were provided. On June 21, 1907, the board of estimate and apportionment adopted a resolution authorizing the issuance of capital stock to an amount not exceeding $1,300,000 for various purposes, including, among others, the work to be done under said proposed supplemental contract. The resolution of the board of Aldermen, concurring in the resolution for the issuance of the corporate stock, was passed July 23, 1907, and approved by the mayor July 30, 1907. The contract in suit bears the date of June 27, 1907. It was acknowledged by the plaintiff's assignors on that day. The commissioner of public charities acknowledged it on the 8th day of July, 1907, and on the 2d day of August, 1907, transmitted it to the comptroller for certification. On the 14th of September, 1907, the comptroller attached his certificate pursuant to section 419 of the charter (Laws 1901, c. 466) that there remained unpaid and unexpended sufficient funds to pay the estimated expense of executing the contract, and on the 16th of September, 1907, the contract was delivered by the commissioner to the plaintiff's assignors. Work on the contract was in fact begun about July 1st, and it was completed October 14, 1907.

The city contends (1) that the resolution of March 25th only authorized the commissioner to execute a contract with the Church Construction Company, and that he, therefore, had no power to enter into a contract with the sureties of that company; (2) that, having declared the contract abandoned, the contractor and its sureties were in default and the commissioner was precluded by section 419 of the charter from entering into a contract with them; (3) that the contract was void because, when it was executed by the plaintiff's assignors, there was no appropriation out of which the cost of the work could have been paid; and (4) that the contract was void because at the time of the commencement of the work the comptroller had not indorsed thereon the certificate required by section 419 of the charter.

It was obviously the purpose of section 419 of the charter to require a public letting of all contracts involving an expenditure of more than $1,000 unless otherwise ordered by more than three-fourths of the members elected to the board of aldermen. The authority of the board of aldermen was requisite only to the making of a contract without public letting. Such authority was conferred, and thereby the requirement of the charter was complied with. Naturally a supplemental contract would be made with the original contractor and so the name of the said contractor was incorporated in the request for authority and in the resolution conferring it. Perhaps, literally construed, the resolution only conferred authority to make a contract with the contractor named, but the obvious purpose of applying for such authority was to get the work done without the delay incident to a public letting, and the object of the resolution was to permit that to be done, and we are not disposed to adopt a technical and narrow view, utterly regardless of the purpose and intent of the resolution. After having declared the original contract abandoned, the commissioner, upon advice of the corporation counsel, took the position that he could require the sureties, not only to complete the original contract, but to perform

the supplemental contract, which had not even then been executed. The sureties acceded to the demand of the commissioner, and took the place of their principal with respect to the original and the unexecuted supplemental contract, and the latter must be deemed to have been made with them, not as strangers to the contract, but as sureties acting for their principal, and it was therefore fairly within the purpose and intent of said resolution.

It is too late now for the city, after receiving the benefit of a full compliance with its demands, to change its position and assert, not only that the commissioner was wrong in making the demand, but that he did not even have the power to allow the sureties either to finish the original contract or to perform the supplemental contract. That conclusion disposes of the first and second points of the city. The notice of the commissioner, declaring the original contract abandoned, must be read in connection with the subsequent notice to the sureties, requiring them to perform both contracts. Having procured the sureties to step into the shoes of their principal with respect to both, the city is in no position to assert that they were in default, and that the commissioner was precluded by section 419 of the charter from even allowing them to do that, even if otherwise he would have been so precluded, which we are far from deciding.

The last two points may likewise be disposed of together, for they relate to the same thing, namely, the existence of an unapplied and unexpended appropriation, and the certificate of the comptroller to that effect. All of the requirements of the charter under that head were complied with long before the work was completed, and, indeed, before the fully executed contract was delivered to the plaintiff's assignors. They executed the contract on the 27th day of June, and in good faith began the work almost immediately, without waiting for the city officials to perform the ministerial acts necessary to give validity to it. Fortunately for them, the present attitude of the city was not conceived until after all of those acts had been performed. Although the work on the original contract could not proceed until additional work, not contemplated by it, was done, the commissioner declared the contract abandoned, and demanded that the sureties complete it and perform a supplemental contract, which had not been made, and which the city was not even in a position to make. It took the city officers from the 4th of May until the 14th of September to perform the various acts necessary to make the supplemental contract and to give it final validity. But the city was not harmed by the fact that the plaintiff's assignors took the hazard of receiving fair treatment. The charter provisions were designed to protect the city, and must be observed; but they were not intended to enable the city to get the benefit of work done in good faith without paying for it.

The judgment should be reversed and a new trial granted, with costs to appellant to abide the event. All concur.